IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ROBERT MICHAEL BARRINGER | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:12-cv-757-TFM |
| | ) | [wo] |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Robert Michael Barringer, Jr. ("Plaintiff" or "Barringer") applied for supplemental security income under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. § 1383(c)(3), on October 28, 2008. Tr. 114. After being denied on November 17, 2008, Barringer timely filed for and received a hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision on April 20, 2010. Tr. 23, 31. Barringer subsequently petitioned for review to the Appeals Council who rejected review of Barringer's case on July 18, 2012. Tr. 1. As a result, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). *Id.* Judicial review proceeds pursuant to 42 U.S.C. § 405(g), and 28 U.S.C. § 636(c). After careful scrutiny of the record and briefs, for reasons herein explained, the Court AFFIRMS the Commissioner's decision.

## I. NATURE OF THE CASE

Barringer seeks judicial review of the Commissioner's decision denying his

application for supplemental security income benefits.  United States District Courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence.  42 U.S.C. § 405.  The court may affirm, reverse and remand with instructions, or reverse and render a judgment.  *Id*.

## II. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one.  The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied.  *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'"  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)).  Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)); *Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district

court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the evidence preponderates against the Commissioner's findings. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth*, 703 F.2d at 1239).

The Court will also reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor*, 786 F.2d at 1053).

### III. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement,

provided they are both insured and disabled, regardless of indigence.[1]  *See* 42 U.S.C. §
423(a).  The Social Security Act's Supplemental Security Income ("SSI") is a separate
and distinct program.  SSI is a general public assistance measure providing an additional
resource to the aged, blind, and disabled to assure that their income does not fall below
the poverty line.[2]  Eligibility for SSI is based upon proof of indigence and disability.  *See*
42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C).  However, despite the fact they are separate
programs, the law and regulations governing a claim for DIB and a claim for SSI are
identical; therefore, claims for DIB and SSI are treated identically for the purpose of
determining whether a claimant is disabled.  *Patterson v. Bowen*, 799 F.2d 1455, 1456 n.
1 (11th Cir. 1986).  Applicants under DIB and SSI must provide "disability" within the
meaning of the Social Security Act which defines disability in virtually identical language
for both programs.  *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§
404.1505(a), 416.905(a).  A person is entitled to disability benefits when the person is
unable to

> Engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result
> in death or which has lasted or can be expected to last for a continuous
> period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is one
resulting from anatomical, physiological, or psychological abnormalities which are

---

[1] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes.
*See* Social Security Administration, Social Security Handbook, § 136.1, *available at*
http://www.ssa.gov/OP_Home/handbook/handbook.html
[2] SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general
tax revenues.  *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100,
*available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

(1) Is the person presently unemployed?

(2) Is the person's impairment(s) severe?

(3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[3]

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004).  Claimants establish a prima facie case of qualifying disability once they meet the burden of proof from Step 1 through Step 4.  At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform.  *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's

---

[3] This subpart is also referred to as "the Listing of Impairments" or "the Listings."

Residual Functional Capacity (RFC).  *Id*. at 1238-39.  RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence.  *Id*.  It also can contain both exertional and nonexertional limitations.  *Id*. at 1242-43.  At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform.  *Id*. at 1239.  To do this, the ALJ can either use the Medical Vocational Guidelines[4] ("grids") or hear testimony from a vocational expert (VE).  *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.  Each factor can independently limit the number of jobs realistically available to an individual.  *Id*. at 1240.  Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id*.

## IV.  ADMINISTRATIVE FINDINGS AND CONCLUSIONS

Barringer, age 47 at the time of the hearing, has completed the 12th grade, and is able to read and write.  Tr. 114, 136, 141.  Barringer has past relevant work as a contractor (skilled, light), construction worker (semi-skilled, heavy), and porter/car detailer (unskilled, medium).  Tr. 50-51.  Barringer's alleged disability onset date is August 1, 2008.  Tr. 23.  Barringer has not engaged in substantial gainful work activity since his application date of October 21, 2008.  Tr. 25.  The record is insufficient to

---

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2; *see also* 20 C.F.R. § 416.969 (use of the grids in SSI cases).

determine if Barringer meets the insured status requirements of the Social Security Act. Barringer claims he is unable to work because of pain in his left leg as a result of a compound fracture and subsequent surgeries.  Tr. 25.

Barringer only has a sparse treatment record, but the ALJ considered all of the medical records available.   On August 25, 2008, Barrington received treatment at Andalusia Regional Hospital after he fell off of a 12 foot ladder and "sustained an open left tibia/fibula fracture and required open reduction external fixation of the joint."  Tr. 25.  Dr. Clark S. Metzger, Sr. MD ("Dr. Metzger") noted that Barringer "tolerated the procedure well and was taken to the recovery room in stable condition."   Tr. 224. Barringer was prescribed a fracture walker.  *Id.*

On September 6, 2008, Barringer slipped on the bathroom floor and "slammed his leg into the floor."  Tr. 202.  As a result Barringer "dislodged pins from his fixator bed pans and sustained recurrent open tib-fib fracture."  *Id.*  Dr. Metzger advised Barringer of a "drastically increased" risk of infection and amputation as a result of a second surgery, as well as other increased risks.  Tr. 203.  Barringer opted to receive a second surgery on his left leg.  *Id.*

On September 17, 2008, Barringer returned to Dr. Metzger's office for a follow-up appointment.  Tr. 28, 234.  Dr. Metzger noted that Barringer is an "extremely pleasant, well developed, well nourished white male in no acute distress."   *Id.*   Dr. Metzger observed that Barringer had "5/5 strength in all lower extremity motor groups;" his sensory exam was grossly intact; he had moderate swelling; his wound was healing well, although he may lose a small area of skin; all of the pin sites looked good; and his "x-rays

are acceptable given the severity of the injury." *Id.* Dr. Metzger's overall impression was that Barringer has made satisfactory progress. *Id.* Dr. Metzger counseled Barringer on future care, and explained that it is a "devastating injury to his lower extremity and that there is no hope of getting a normal leg out of this." *Id.*

On October 8, 2008, Barringer returned for a 3-week follow up. Tr. 28, 233. Dr. Metzger reported that Barringer is doing well and did not have any problems since his last visit. *Id.* Dr. Metzger noted that the wound had been gradually healing, and there was no deep drainage. *Id.* During examination, Dr. Metzger again noted the Barringer was in no acute distress, and that he is alert and oriented. *Id.* Dr. Metzger also reported that Barringer's "pin sites look great," his wound is about 13mm in diameter, and that the x-rays were satisfactory considering the magnitude of the injury. *Id.* Dr. Metzger's impression was that Barringer has again made satisfactory progress. *Id.* Dr. Metzger instructed Barringer that he is to continue strict, non-weight bearing status, and return for a follow up in six weeks. *Id.* Barringer never returned.

On February 26, 2010, nearly a year and a half since Barringer was last seen, Dr. Metzger wrote a letter on behalf of Barringer. Tr. 29, 248. Dr. Metzger stated that Barringer can "walk only very short distances", "has a permanent limp," and "generally has a lot of pain for the rest of the day and the following day when [he walks more than short distances]." *Id.* Dr. Metzger stated that he considers Barringer disabled from any type of gainful employment. *Id.*

After review of the medical records, the ALJ found the described impairment of status post fractures of the left lower extremity "has caused more than a minimal

limitation in [Barringer's] ability to work and is a severe impairment." Tr. 25.  The ALJ

found that Barringer "has the residual functional capacity to perform sedentary work as

defined in 20 C.F.R. § 416.967(a) except that [he] can never perform any prolonged

standing or walking; can walk short distances at one time; and has no more than moderate

pain that is controlled by medications." Tr. 26.  The ALJ found that Barringer is unable

to perform any past relevant work.   Tr. 29.   The ALJ then found that considering

Barringer's "age, education, work experience, and residual functional capacity, there are

jobs that exist in significant numbers in the national economy that [he] can perform."  Tr.

30.

## V.  ISSUES

Barringer raises two issues for judicial review:

(1) Whether the ALJ erred in forming his RFC assessment despite the record being

devoid of any physical RFC assessments completed by a physician; and

(2) Whether the ALJ erred because his RFC finding was ambiguous and he failed

to include the required "function-by-function" assessment.

*See* Doc. 13 at 3.

## VI.  DISCUSSION

## A.    The ALJ properly formed a RFC assessment without a physician's physical RFC assessment in the record.

Barringer argues that "the Commissioner's decision should be reversed because

there is absolutely no support for the ALJ's RFC assessment as the record is devoid of

any physical RFC assessment from any physicians whatsoever."  *See* Doc. 13 at 3.  The

Government responded that "Plaintiff points to no agency regulation that requires a physician's assessment; he has not demonstrated that the ALJ did not have enough information to enable him to make a [RFC] determination; nor has he pointed to any objective contemporaneous medical records that suggest the ALJ's [RFC] assessment was incorrect." *See* Doc. 14 at 5-6 (citing *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2013)).

> "After careful consideration of the entire record," the ALJ found that:
>
> the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 416.967(a) except that the claimant can never perform any prolonged standing or walking; can walk short distances at one time; and has no more than moderate pain that is controlled by medications.

Tr. 26. At this point in the five-step, sequential evaluation the burden is on the claimant to prove that she is disabled. *Jones*, 190 F.3d at 1228 (citing 20 C.F.R. § 416.912 (1998)); *see also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). "At the fourth step, the ALJ must assess: (1) the claimant's residual functional capacity ('RFC'); and (2) the claimant's ability to return to her past relevant work." *Phillips*, 357 F.3d at 1238 (citing 20 C.F.R. § 404.1520(a)(4)(iv)). To determine the claimant's RFC, the ALJ "must determine if the claimant is limited to a particular work level." *Id.* To be deemed capable of performing sedentary work, the claimant must have the ability to "lift no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools" and "walking and standing are required occasionally." 20 C.F.R § 404.1567(a). "Although a claimant may provide a statement containing a physician's opinion of her remaining capabilities, the ALJ will evaluate such a statement in light of

the other evidence presented and the ultimate determination of disability is reserved for the ALJ." *Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 923 (11th Cir. 2007) (citing 20 C.F.R §§ 404.1513, 404.1527, 404.1545).

In *Green*, the ALJ discredited the only physician RFC assessment that was in the record, and the plaintiff argued that the ALJ lacked substantial evidence to base his RFC assessment without a physician's RFC.  *Id.*  The Eleventh Circuit stated that even without considering a physician's RFC assessment, the record indicated that she was managing her impairments well, and her symptoms were controlled.  *Id.* at 923-24.  As a result, the Eleventh Circuit found that "substantial evidence supports the ALJ's determination that Green could perform light work."  *Id.* at 924.  Similarly, in *Griffin v. Astrue*, the plaintiff argued that a physician's RFC assessment was required.  2008 WL 4417228, *9 (S.D. Ala. Sept. 23, 2008).  The court found that despite not having a physician's RFC, the ALJ's RFC was "supported by the claimant's treating physicians, as well as the absence of functional limitations placed on the claimant by any medical source."  *Id.* at *10.  The court noted that "[w]hile Plaintiff asserts that a physician's RFC assessment was required, she has not demonstrated that the ALJ did not have enough information to enable him to make a RFC determination, nor has she pointed to any medical evidence which suggests that the ALJ's RFC assessment is incorrect."  *Id.*  The court ultimately held that "substantial evidence supports the ALJ's determination that Plaintiff possesses the RFC to perform light work" because the medical records demonstrated that despite having severe impairments, her condition was stable and controlled with medication.  *Id.*  The court also found that the medical records did not reveal any evidence of functional

limitations, and none of the plaintiff's physicians limited her activities.  *Id.*

After review of the ALJ's opinion, it is clear to this Court that the ALJ carefully considered the medical evidence in the record when determining Barringer's RFC.  The Court recognizes that the record lacks a physical RFC assessment completed by a physician.  A RFC assessment is used to determine the claimant's capacity to do as much as they are possibly able to do despite their limitations.  *See* 20 C.F.R. § 404.1545(a)(1) (2010).  An RFC assessment will be made based on all relevant evidence in the case record.  *Id.*; *Lewis*, 125 F.3d at 1440.

At a hearing before an ALJ, "the [ALJ] is responsible for assessing [the claimant's] residual functional capacity."  20 C.F.R. § 404.1546(c) (2010).  The claimant is "responsible for providing the evidence [the ALJ] will use to make a finding about [the claimant's] residual functional capacity."  20 C.F.R. § 404.1545(a)(3) (2010).  The ALJ is "responsible for developing [the claimant's] complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [their] own medical sources.  *Id.; Holladay v. Bowen,* 848 F.2d 1206, 1209-10 (11th Cir. 1988).  "The ALJ is not required to seek additional independent expert medical testimony before making a disability determination if the record is sufficient and additional expert testimony is not necessary for an informed decision."  *Nation v. Barnhart*, 153 Fed. Appx. 597, 598 (11th Cir. 2005) (citing *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999)); *see also Griffin*, 2008 WL 4417228, at *10 (citing 20 C.F.R. § 416.912(d)) ("The ALJ is bound to make every reasonable effort to obtain all the medical evidence necessary to make a determination [. .

.]; however, he is not charged with making Plaintiff's case for her").  As previously stated, Barringer "has the burden of proving that [he] is disabled."  *Id.* (citing 20 C.F.R. § 416.912(a) and (c); *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The lack of a physician's RFC assessment in the record falls upon the claimant; the duty to obtain sufficient medical records to make a disability determination falls upon the ALJ.

Here, the ALJ found that Barringer suffers from the "following severe impairment: status post fractures of the left lower extremity."  Tr. 25.  However, the ALJ determined that

> [a]fter careful consideration of the evidence, the [ALJ] finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the [RFC] assessment.

Tr. 27.  The ALJ took particular note of Barringer's testimony regarding his mobility and use of an ambulatory device, his daily activities, and his medication regimen and pain management.  Tr. 27-28.   Similarly, the ALJ considered the credibility of the disabling degree of Barringer's impairments in light of his treatment history, and the disability letter submitted by Dr. Metzger.  Tr. 28-29.

First, the ALJ found that because of Barringer's mobility, lack of a required ambulatory device, and his daily activities his "alleged limitations are not fully credible." Tr. 27.  The ALJ focused on Barringer's testimony that he does not use a cane regularly, although he does own one.  *Id.*  Barringer did not testify that he was ever prescribed a cane, nor do the records indicate that he was.  *Id.*  Barringer testified that he used a walker

for less than one year.  *Id.*  He further testified that "if he could lean on a wall or furniture that he could get around even without the use of a cane."  *Id.*

Barringer testified that he has to go up two steps to enter his mobile home.[5]  Tr. 26-27.  Barringer's daughter visits him about once a week, and takes him shopping, although he has trouble walking around the store for extended periods of time.  Tr. 27.  Barringer is able to perform his own personal care, but does have a chair in the shower to prevent him from losing his balance.  Tr. 26-27.  Barringer prepares his own meals and attends church twice a week.  Tr. 27.  Barringer testified that his doctor assigned him progressive weight bearing exercises to strengthen his leg, and he performs them every day.  *Id.*  Barringer stated that he "could try" to perform a job that requires primarily sitting down.  *Id.*  Barringer also testified that when his leg is elevated and he is taking his medication, he does not have any problems.  *Id.*

Next, the ALJ reviewed Barringer's credibility in light of his medication regimen and pain management.  Barringer testified that he is prescribed medication to manage his pain; however, the only medication he reported taking at the time of the hearing is Mobic.  *Id.*  He stated that Mobic is a recent prescription, and he does not take it every day.  *Id.*  Prior to being prescribed Mobic, Barringer stated that he took only over-the-counter medications for pain relief, although he reported that they did not significantly help until the last couple of months that he took them.  *Id.*  Additionally, Barringer received an injection of pain medication during his last doctor's visit; however, he reported only receiving this injection on that one occasion.  *Id.*  Barringer was also prescribed

---

[5] Barringer testified that he lives alone; however, other testimony indicates that Barringer lives with a roommate.  Tr. 26.

Cefuroime cream, an antibiotic, which he testified was for pain relief; however, he testified that it did not help at all.  Tr. 28.  The ALJ noted that the "brief and only recent nature of this treatment fails to support his allegations of ongoing pain and even the extent of his alleged limitations."  *Id.*  The ALJ further noted that prior to his recent appointment which occurred two months before the hearing, Barringer had not sought treatment from any doctor in a year and a half.  *Id.*  The ALJ concluded that "the treatment history and the medications prescribed suggest that the claimant's moderate pain that he reports is substantially controlled by his pain medications."  *Id.*

The ALJ also reviewed Dr. Metzger's medical records regarding Barringer's pain and medications.  Dr. Metzger reported that Barringer's pain "occurs only when walking more than short distances."  *Id.*  Dr. Metzger did not prescribe any ongoing pain medications, nor did he recommend any pain medication.  The ALJ found that "the lack of narcotic medications or other such significant pain medications is inconsistent with more than moderate pain."  *Id.*  The ALJ further found that Barringer's ongoing use of solely over-the-counter medications is consistent with his pain being largely controlled. *Id.*  Barringer wore an external fixation device for five months, despite Dr. Metzger's estimate of three months in the device.  *Id.*  Barringer also used a walker to get around, but discontinued use within a year of his injury.  *Id.*  The ALJ noted that Barringer has received substantially no treatment since his initial injury, there is no evidence of physical therapy, and the only treatment that was prescribed was weight bearing strengthening exercises that Barringer does at home.  *Id.*

The ALJ then reviewed the medical records as a whole. The ALJ noted that after re-injuring his leg on September 6, 2008, Barringer had a significantly greater risk of ongoing problems such as amputation and infection; however, none of the risks or potential complications ever materialized. *Id.* The ALJ considered Dr. Metzger's records from September 17, 2008, eleven days after Barringer's second surgery, which indicate that Barringer was in no acute distress. *Id.* Dr. Metzger observed that Barringer had "5/5 strength in all lower extremity motor groups;" his sensory exam was grossly intact; he had moderate swelling; his wound was healing well, although he may lose a small area of skin; and all of the pin sites looked good. Tr. 28, 234. The ALJ noted that the x-rays from Barringer's initial and second injuries "show that his comminuted fracture of both the tibia and fibula were significant and had poor alignment and positioning of the fractured fragments at the time of his x-ray." Tr. 29. However, the ALJ also noted that during both Barringer's September and October appointments, Dr. Metzger found that Barringer's x-rays were "satisfactory considering the magnitude of the injury and that the claimant still was making satisfactory progress." Tr. 28-29. The ALJ also found it significant that despite Barringer's "complaints of significant pain and limitations, he has not sought substantial or frequent treatment even from free or reduced cost sources even a source such as the emergency room." Tr. 29.

The ALJ then reviewed Dr. Metzger's opinion letter dated February 26, 2010. The ALJ gave no significant weight to the opinion evidence submitted by Dr. Metzger stating that Barringer is "disabled from any type of gainful employment." Tr. 29, 248. First the ALJ assigned no significant weight to the opinion evidence because "Dr. Metzger's

opinion regarding disability is an issue reserved to the Commissioner and cannot be given controlling weight." Tr. 29. Next, the ALJ gave the opinion no significant weight because "it is notably inconsistent with the medical evidence overall." *Id.* Finally, the ALJ found that Dr. Metzger had not examined Barringer in nearly a year and a half prior to the date of the opinion letter; and therefore, he did not find the opinion evidence credible. *Id.* However, insofar as Dr. Metzger opined that Barringer can walk short distances, but with a limp, the ALJ said that despite there being "no significant medical evidence to support the extent of his reports; however, the claimant is given the benefit of the doubt." *Id.* The ALJ limited Barringer to sedentary work, and found that he can "sit for six hours total in an eight hour day and lift ten pounds occasionally [. . .], is limited in performing any prolonged standing or walking, and he can walk only short distances at one time." *Id.*

The ALJ is responsible for determining Barringer's RFC, not a physician. Had Barringer received an assessment by a physician, the ALJ would have been required to consider that assessment in making his determination. "Even though Social Security courts are inquisitorial, not adversarial, in nature, claimants must establish that they are eligible for benefits. The [ALJ] has a duty to develop the record where appropriate but is not required to order [additional evidence] as long as the record contains sufficient evidence for the [ALJ] to make an informed decision." *Ingram v. Comm'r of Soc. Sec. Admin.,* 496 F.3d 1253, 1269 (11th Cir. 2007) (citing *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001)). It is clear to this Court that the ALJ carefully considered the medical evidence in the record in determining Barringer's RFC, and the record contained

sufficient evidence for the ALJ to make his decision.  Therefore, the Court finds that the

ALJ's findings are supported by substantial evidence.

**B.    The ALJ's Residual Functional Capacity finding properly included the required "function-by-function" assessment.**

The Social Security Administration's ("SSA") policies and policy interpretations

regarding "the assessment of [a claimant's RFC] in initial claims for disability benefits

under titles II and XVI of the Social Security Act" are set forth in SSR 96-8p:"

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

SSR 96-8p, 61 Fed. Reg. 34474, 34477 (July 2, 1996).  Functional limitations include

both physical limitations and mental limitations.  20 CFR 404.1545(b)-(c) (1991).  The

physical limitations can create a "limited ability to perform certain physical demands of

work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or

other physical functions (including manipulative or postural functions, such as reaching,

handling, stooping or crouching)."  20 CFR 404.1545(b).  The mental limitations can

create a "limited ability to carry out certain mental activities, such as limitations in

understanding, remembering, and carrying out instructions, and in responding

appropriately to supervision, co-workers, and work pressures in a work setting."  20 CFR

404.1545(c).  These limitations may reduce a claimant's ability to do past work or other

work.  20 CFR 404.1545(b)-(c).

Barringer contends that the Commissioner's decision should be reversed because

the ALJ's RFC finding was "ambiguous and failed to include the required 'function-by-function' assessment." *See* Doc. 13 at 6.  The ALJ found that Barringer retains the RFC to "perform sedentary work as defined in 20 C.F.R. § 416.967(a) except that [Barringer] can never perform any prolonged standing or walking; can walk short distances at one time; and has no more than moderate pain that is controlled by medications." Tr. 26.  The ALJ, taking the limitations he set into account and with the testimony of a VE, found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform."  Tr. 30.

In reaching his RFC determination, the ALJ carefully considered the entire record, "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," as well as opinion evidence.   Tr. 26.  In addition to all of the objective medical evidence and testimonial evidence discussed in full above, at Step Three the ALJ found that Barringer's impairments "do not meet the criteria of section 1.06 of Appendix 1 to Subpart P of Part 404, dealing with fractures of the lower extremity, as the evidence fails to show evidence of an inability to ambulate effectively continuing over twelve months from the onset of [Barringer's] injury." *Id.*   The ALJ stated that ineffective ambulation is defined as "having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device that limits the functioning of both upper extremities." *Id.*  The ALJ noted that Barringer had an external fixation device through January 2009, and he testified that he concluded the use of a walker within a year of his surgery. *Id.*  The ALJ also noted that Barringer is able to perform his own personal care,

lives alone in a trailer with two steps to enter the home, and that he testified that he does not require the use of a single cane regularly. *Id.*

The ALJ similarly found that Barringer's impairments "do not meet the criteria of section 1.02 of Appendix 1 to Subpart P of Part 404, dealing with major dysfunction of a joint due to any cause, as the evidence fails to show ongoing limitations resulting in the inability to ambulate effectively well." *Id.* The ALJ stated that although Barringer was non-weight bearing following his surgery, his "continuing limitations considering the return to effective ambulation, even without a cane at times, cannot meet the requirements of this section." *Id.* The ALJ ultimately found that because "no examining or treating medical source has reported that [Barringer] has an impairment that medically equals the criteria of a listed impairment," that he does not have an impairment that "meets or medically equals the criteria of any impairment included in the Listing of Imperilments." *Id.*

The Eleventh Circuit has held on multiple occasions that it "[does] not require the ALJ to 'specifically refer to every piece of evidence in his decision,' so long as the decision is sufficient to allow us to conclude that the ALJ considered the claimant's medical condition as a whole."[6] *Castel v. Comm'r of Soc. Sec.*, 355 Fed. Appx. 260, 263 (11th Cir. 2009) (quoting *Dyer v. Barnhart,* 395 F.3d 1206, 1211 (11th Cir.2005) (per curium)). The court found that "[t]he ALJ performed a proper RFC function analysis, based on substantial evidence, and we shall defer to his conclusions." *Id.* The Eleventh

---

[6] Although counsel for the claimant cites to cases where the court required explicit identification of the claimant's work related abilities on a function-by-function basis, counsel cites to jurisdictions that have no binding effect on this Court. Instead of citing to the Eleventh Circuit, who has been clear on their assessment of this issue, counsel cites to United States District Courts in Georgia, New York, Texas, Wisconsin, and Kansas, as well as the Tenth Circuit.

Circuit has also stated that "while the ALJ could have been more specific and explicit in his findings, he did consider all of the evidence and found that it did not support the level of disability asserted by the claimant." *Freeman v. Barnhart*, 220 Fed. Appx. 957, 960 (11th Cir. 2007).   The court then held that "the ALJ complied with SSR-96-8p by considering [the claimant's] functional limitations and restrictions and, only after he found none, proceeding to express [the claimant's] residual functional limitations in terms of exertional levels." *Id.*

Finally, Barringer argues that the ALJ "included ambiguous language which does not clearly identify the vocationally relevant limitations resulting from Mr. Barringer's limitations." *See* Doc. 13 at 9.   Barringer avers that the ALJ failed to specify with numerical value exactly how long the ALJ considers "prolonged standing or walking" to be, exactly how far is a "short distance," and how much pain is "moderate" pain.   *Id.* Barringer points to no law, nor has this Court found any, that requires an ALJ to precisely identify in numerical values exactly how far a claimant can walk, how long he can stand, or how much pain he suffers.   Additionally, the records as a whole support the ALJ's determination.   Similarly, Barringer argues that the ALJ found that he "has no more than moderate pain," yet failed to "specify how this pain affects his ability to work." *Id.*   This argument fails because the ALJ clearly stated that Barringer "has no more than moderate pain that is controlled by his medications."   Tr. 26.   As reviewed above, the ALJ conducted a thorough review of Barringer's pain in light of both the medical and testimonial evidence, and concluded that his pain is controlled by his medications, and is not limited by it.   Therefore, Barringer's argument lacks merit.

In light of the ALJ's detailed review of the evidence as outlined above, the Court finds that the ALJ performed a proper RFC analysis that is based on substantial evidence. Although the ALJ did not explicitly mention all of the words associated with functional limitations, such as sitting, standing, walking, lifting, carrying, pushing, pulling, reaching, handling, stooping, crouching, understanding, remembering, etc., the ALJ clearly concluded that based upon his review of the medical records as outlined in his opinion Barringer is not limited to a disabling degree.  The ALJ's findings regarding Barringer's limitations meet the requirement of SSR 96–8p because it is clear from ALJ's findings that he considered all available evidence as a whole.

## VII. Conclusion

Pursuant to the findings and conclusions detailed in this Memorandum Opinion, the Court concludes that the ALJ's non-disability determination is supported by substantial evidence and proper application of the law.  It is, therefore, **ORDERED** that the decision of the Commissioner is **AFFIRMED.**   A separate judgment is entered herewith.

DONE this 21st day of August, 2013.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE